1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

11 | S&J LOGISTICS, INC. and SUKHVIR SING,

Case No. 1:22-cv-00109-JLT-CDB

12 |                 Plaintiffs,

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

13 |         v.

(Doc. 11)

14
15 | UNITED NATIONAL INSURANCE COMPANY, CONTINENTAL TRUCKING ASSOCIATION, and TRINITY UNDERWRITERS, LLC,

16
17 |            Defendants.

18

     This insurance dispute arises out of an automobile collision involving an employee of S&J

19

Logistics, Inc., which caused extensive damage to S&J's vehicle.  Pending is Defendants' Motion

20

to Dismiss (Doc. 11), which is centrally premised on the argument that the policy does not cover

21

Plaintiffs' losses.  For the reasons set forth below, the Court **GRANTS** Defendants' motion.

22

    I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

23

     S&J is a trucking-for-hire business, located in Bakersfield, California.  (Ex. A, Doc. 6-1 at

24

2.)[1]  On June 13, 2020, S&J procured a commercial insurance policy from United, for the one-

25

year period between June 13, 2020, and June 13, 2021.  (FAC, Doc. 6 at ¶ 8; Ex. A, Doc. 6-1 at

26
27

---

28

[1] The Court considers the exhibits attached to Plaintiff's Complaint, including email correspondence and the insurance policy in dispute.  *See Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross & Blue Shield of Ill.*, 983 F.3d 435, 439 (9th Cir. 2020).

2.) United named Continental as the insured party and named S&J as a member of Continental. (Doc. 6 at ¶ 9; Ex. A, Doc. 6-1 at 2.)  The insurance policy contains the following relevant clauses:

**G. Drivers**

All drivers must meet minimum policy requirements as set forth by your policy (see attached minimum driver hiring criteria) before they are hired.  All qualified drivers must be reported immediately upon hiring.  Unreported drivers could cause cancellation of policies.  Claims with Unscheduled Drivers will not be paid.

. . . .

INSURING AGREEMENTS

1.      In consideration of the premium paid . . . the insurance company hereby agree[s] to indemnify the Insured against direct and accidental loss of or damage to the Automobiles specified in the Schedule herein, during the Period of Insurance specified in the Schedule, while such Automobiles are within the United States of America[.]

. . . .

DEFINITIONS
. . .

SECTION C. COLLISION OR UPSET

This Section covers loss of or damage to an Automobile caused by accidental collision of the Automobile with another object, or by upset, provided always that the deductible specified in the Schedule shall be deducted from the amount of each and every loss or damage to each Automobile.

. . . .

**AUTOMOBILE PHYSICAL DAMAGE ADDITIONAL ENDORSEMENTS AND CLAUSES**

. . . .

**DRIVER CRITERIA**

Every driver must have his/her Motor Vehicle Report (MVR) approved by Continental Insurance Agency within 7 days of their employment the subject trucking firm.  They must comply with the following Driver Criteria, and have a Single Valid Fully Commercial Driving License, endorsed for the specific type equipment operated at the time of loss or damage.  If any of the Driver Criteria, including the following, is not fully complied with, then the driver is not acceptable or approved and will result in any claim or loss involving such unacceptable or unapproved driver as being not covered for any and all coverage's that might otherwise have been applicable.

(Ex. A, Doc. 6-1 at 6, 9, 15.)

*///*

2

1

A. <u>The Automobile Accident</u>

2       On April 3, 2021, Harminder Singh started work as a truck driver for S&J.  (Doc. 6 at

3  ¶ 14.)  The same day, S&J assigned him to deliver a load using one of S&J's Freightliner

4  trucks—a vehicle covered by the policy.[2]  (*Id*. at ¶ 15.)  On April 5, 2021, while driving S&J's

5  tractor, Harminder "collided into the rear-end of another vehicle," causing substantial damage to

6  S&J's tractor.  (*Id.* at ¶ 19.)  On April 9, 2021, Plaintiff contacted its insurance agent, JS

7  Insurance ("JSI") to add Harminder to its policy.  (*Id.* at ¶ 20; Ex. B, Doc. 6-1 at 23 (email sent to

8  JSI on April 9, 2021, requesting to add Harminder to policy).)  Relying on the language of the

9  policy's "Driver Criteria" section, S&J "believed it had 7 days to add Harminder into the Policy

10  in order for coverage to attach[.]" (*Id.* at ¶ 18.)  JSI contacted its general agent, Defendant Trinity

11  Underwriters, LLC ("Trinity"), requesting to add Harminder to S&J's policy.  (*Id.* at ¶ 21.)

12       Trinity contacted S&J, requesting Harminder's driver history, and the two parties

13  communicated back-and-forth between April 9, 2021, and April 19, 2021.  (Ex. C, Doc. 6-1 at 25

14  (email to JSI regarding Harminder's driver history).)  On April 19, 2021, Trinity emailed JSI,

15  confirming that it had retroactively added Harminder to S&J's policy, effective April 9, 2021.

16  (Doc. 6 at ¶ 25; Ex. D, Doc. 6-1 at 27 (confirmation email that Harminder was added to S&J's

17  policy "effective (*04/09/2021*)" (emphasis in original).)  At some point, S&J submitted a claim to

18  United and Continental for coverage of Harminder's automobile collision.  On July 21, 2021,

19  United's Claim Specialist denied Plaintiff's claim, stating that Harminder "was not approved by

20  [Continental] per policy conditions."  (Doc. 6 at ¶ 28; Ex. E, Doc. 6-1 at 29.)  Later on, the Claim

21  Specialist wrote Plaintiff another email, "stating that although [Harminder] was added on

22  04/09/2021, he was added after the date of loss of 04/05/2021," and maintained that United would

23  not provide coverage for the accident.  (Doc. 6 at ¶ 33.)

24       In its claim denial letter, United's Claim Specialist wrote: "Loss or damage to any covered

25  auto operated by a driver not approved by the Continental Trucking Association is specifically

26  excluded under the terms of the policy, as outlined" in Exclusion 8 of the insurance contract.  (Ex.

27

28

---

[2] Sukhvir Singh guaranteed the loan to secure the tractor, and as such, "had a direct insured interest in the insurance policy," as the policy "was to protect his interest and ensure his benefit and the loan company['s] through which the truck was bought."  (*Id.* at ¶ 17.)

E, Doc. 6-1 at 30).[3]  Thus, in his follow-up email, the Claims Specialist further explained: "[I]t appears the underwriter confirmed that [Harminder] was added to the policy effective 04/09/21, after the loss.  Per the policy, in order for a driver to be covered, he must be requested to be added within 7 days of his employment with the insured[;] this does not mean that the coverage will be added retroactively to that date of his employment start."  (Ex. F, Doc. 6-1 at 32.)

Plaintiffs filed their Complaint against Defendants in Kern County Superior Court, and Defendants removed this action to federal court thereafter.  (Doc. 1.)  Plaintiffs filed their First Amended Complaint ("FAC"), alleging eight causes of action sounding in state law.  (Doc. 6.)  Pending is Defendants' Motion to Dismiss (Doc. 11), which the parties fully briefed thereafter.  (Opp'n, Doc. 14; Reply, Doc. 15.)  The Court now turns to the merits of Defendants' motion.

## II.   LEGAL STANDARD

### A.  Rule 12(b)(6)

Pursuant to Rule 12(b)(6), a defendant may move to dismiss a claim in the plaintiff's complaint if the allegation "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"At the pleading stage, all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party."  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[3] The Court notes that per the language of the Claim Specialist's denial letter, he references a separate policy than the one Plaintiffs have attached.  For example, the Claim Specialist references "Policy No TAR0010420, effective 4/1/20 to 4/1/21," and recited Exclusion 8 of the policy.  (Ex. E, Doc. 6-1 at 29.)  To make matters more confusing, the Claim Specialist's subject-line of his letter recites that the policy number is "TAR0010421," which is one digit different from the one previously referenced.  (*Id.*)
    Plaintiffs, however, refer to their policy as "TAR0000001-34928-JINA," (Doc. 6 at ¶ 8), and have attached a policy with the same policy number.  (Ex. A, Doc. 6-1 at 2.)  This policy is for the stated period of June 13, 2020, until June 13, 2021, (*id.*), and does not contain an Exclusion 8.  (*Id.* at 10–11.)
    In addition, though "Exclusion 8" is not found among the documents attached to the First Amended Complaint, similar information is found under "Driver Criteria." (Doc. 6-1 at 15-16)

1  misconduct alleged." *Iqbal*, 556 U.S. at 678.  As such, the plausibility standard is a

2  "context-specific task that requires the reviewing court to [1] draw on its judicial experience and

3  common sense," *Iqbal*, 556 U.S. at 679, and [2] to "'draw all reasonable inferences in favor of the

4  nonmoving party.'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Retail Prop.*

5  *Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014)).

6  "Ultimately, dismissal is proper under Rule 12(b)(6) if it appears beyond doubt that the

7  non-movant can prove no set of facts to support its claims." *Boquist*, 32 F.4th at 773–74 (internal

8  citation and quotation marks omitted) (cleaned up).  However, "[c]onclusory allegations and

9  unreasonable inferences do not provide [] a basis" for determining a plaintiff is entitled to relief.

10  *Coronavirus Reporter v. Apple, Inc.*, 85 F.4th 948, 954 (9th Cir. 2023) (citation omitted).

11       Finally, though resolution of a motion to dismiss under Rule 12(b)(6) is normally confined

12  to the allegations stated in the complaint, the Court "may also 'consider [1] materials that are

13  submitted with and attached to the complaint'; [2] judicial notice of matters of public record'; and

14  [3] unattached evidence on which the complaint necessarily relies if:  [a] the complaint refers to

15  the document; [b] the document is central to the plaintiff's claim; and [c] no party questions the

16  authenticity of the document.'"  *Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross &*

17  *Blue Shield of Ill.*, 983 F.3d 435, 439 (9th Cir. 2020) (quoting *United States v. Corinthian Colls.*,

18  655 F.3d 984, 998–99 (9th Cir. 2011)).  The Court may review such material without converting a

19  motion to dismiss into a motion for summary judgment.  *Harris v. Cnty. of Orange*, 17 F.4th 849,

20  865 (9th Cir. 2021); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

21  **III.   DISCUSSION**

22       In their complaint, Plaintiffs identified eight separate causes of action: (1) breach of the

23  implied covenant of good faith and fair dealing; (2) breach of contract; (3) third party beneficiary;

24  (4) conspiracy to engage in bad faith; (5) violation of California's Unfair Competition Law

25  ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; common law theories of negligence against

26  (6) United and Continental, and (7) Trinity; and (8) intentional misrepresentation.  (Doc. 6 at 7–

27  16.)  Defendants move to dismiss all claims against them.  (*See generally* Doc. 11-1.)

28  ///

5

A.      Abandoned Claims: Negligence

In Plaintiffs' sixth and seventh causes of action in their Complaint, they bring two claims of common law negligence against United and Continental, and Trinity, separately.  (Doc. 6 at 13–15.)  Defendants moved to dismiss both causes of action against them, arguing that the FAC fails to allege facts supporting a duty of care, whether premised on the insurance contract or on common law.  (Doc. 11-1 at 12–13.)  Plaintiffs' Opposition fails to address Defendants' arguments.  (*See generally* Doc. 14.)

During the briefing of a dispositive motion, the failure to defend a claim constitutes abandonment of that claim.  *See Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 881 (9th Cir. 2022) (motion to dismiss context: "It is Plaintiffs' failure to address the municipal liability claim in their Reply Brief, after it was squarely raised by the College District in its Answering Brief, that constitutes abandonment of the claim."); *Walsh v. Nev. Dep't of Hum. Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) ("A plaintiff who makes a claim for injunctive relief in his complaint, but fails to raise the issue in response to a defendant's motion to dismiss on the grounds of immunity from damages, has effectively abandoned his claim, and cannot raise it on appeal.") (citation omitted); *see also Allen v. Dollar Tree Stores, Inc.*, 475 F. App'x 159, 159 (9th Cir. 2012) ("The court properly dismissed Allen's harassment and retaliation claims because her opposition to the motion to dismiss failed to respond to Dollar Tree's argument that those claims were time-barred.").

All such authority supports the conclusion that Plaintiffs have abandoned their sixth and seventh causes of action for negligence by failing to respond to Defendants' arguments in their Opposition.  The Court need not entertain the merits of Defendants' motion on this basis, and therefore **GRANTS** Defendants' motion as it pertains to Plaintiffs' negligence claims.

B.      Contractual Claims

Plaintiffs first two claims sound in contract law.  (Doc. 6 at 7–10.)  Specifically, Plaintiffs bring two claims: one for breach of the implied covenant of good faith and fair dealing, and one for breach of contract.  (*Id.*)  These are essentially the same claim brought twice, as "[a] breach of the implied covenant of good faith *is* a breach of the contract." *Miyahara v. Wells Fargo Bank,*

1   *N.A.*, 99 Cal. App. 5th 687, 703 (Cal. Ct. App. Feb. 9, 2024) (unpublished portion of opinion)

2   (emphasis added) (internal quotation marks and citation omitted); *Thrifty Payless, Inc. v. The*

3   *Americana at Brand, LLC*, 218 Cal. App. 4th 1230, 1244 (2013) (same).

4          For this reason, claims arising under the breach of implied covenant of good faith and fair

5   dealing cannot impose liability without an underlying breach of contract claim.  *Waller v. Truck*

6   *Ins. Exch., Inc.*, 11 Cal. 4th 1, 36 (1995) ("It is clear that if there is no *potential* for coverage . . .

7   there can be no action for breach of the implied covenant of good faith and fair dealing because

8   the covenant is based on the contractual relationship between the insured and the insurer.")

9   (emphasis in original) (citation omitted); *Wong v. Stillwater Ins. Co.*, 92 Cal. App. 5th 1297, 1326

10  (2023) (affirming trial court's grant of summary judgment on breach of implied covenant of good

11  faith and fair dealing because breach of contract claim failed); *All Green Elec., Inc. v. Sec'y Nat'l*

12  *Ins. Co.*, 22 Cal. App. 5th 407, 418 (2018) ("The lack of an underlying contractual obligation also

13  precluded a claim under the implied covenant of good faith and fair dealing.") (citation omitted).

14  This is because both claims are premised on the defendant's failure to "do something required by

15  the contract," requiring the Court to first look to the terms and coverage of the contract itself.  *Cf.*

16  *CSAA Ins. Exch. v. Hodroj*, 72 Cal. App. 5th 272, 276 (2021) ("The elements of a breach of

17  contract claim are that a contract was formed . . . that the defendant did not do something required

18  by the contract . . ."); *Shusha, Inc. v. Century-Nat'l Ins. Co.*, 87 Cal. App. 5th 250, 267 (2022)

19  ("In a claim against an insurance carrier, there are at least two separate requirements to establish

20  breach of the implied covenant of good faith and fair dealing: (1) benefits due under the policy

21  must have been withheld . . .") (cleaned up) (internal quotation marks and citations omitted).

22         The Court's primary task for both claims, then, is to determine whether the parties'

23  insurance policy covered Harminder's automobile collision in the first instance.  "The judicial

24  interpretation of an insurance contract presents a question of law."  *San Jose Sharks, LLC v. Sup.*

25  *Ct. of Santa Clara Cnty.*, 98 Cal. App. 5th 158, 165–66 (2023) (citation omitted).  "While

26  insurance contracts have special features, they are still contracts to which the ordinary rules of

27  contract interpretation apply," whereby the Court construes the mutual intention of the parties

28  "solely from the written provisions of the insurance policy."  *Id.* at 166 (internal quotation marks

1   and citation omitted).  "If the policy language is clear and explicit, it governs.  If the terms are

2   ambiguous [i.e., susceptible to more than one reasonable interpretation], [the Court] interpret[s]

3   them to protect the objectively reasonable expectations of the insured." *Id.* (cleaned up) (internal

4   quotation marks and citation omitted).  However, "[a]mbiguity is not adjudged in the abstract, or

5   in isolation; instead, the policy must be examined as a whole, and in context, to determine

6   whether an ambiguity exists." *Endeavor Operating Co., LLC v. HDI Global Ins. Co.*, 96 Cal.

7   App. 5th 420, 431 (2023) (cleaned up) (internal quotation marks and citations omitted).  "If the

8   language is unambiguous, courts must read the policy to accord with the sole reasonable

9   interpretation." *Id.* (citation omitted).

10          In other words, the Court takes a literal and holistic approach to the interpretation of

11   insurance contracts: "every insurance contract must be interpreted by its particular wording and

12   read in its entirety, with careful attention paid to context, the interrelationship of the provisions of

13   the policy and how they work together, and the actual circumstances of the contracting parties."

14   *John's Grill, Inc. v. The Hartford Fin. Servs. Grp., Inc.*, 86 Cal. App. 5th 1195, 1206 (2022).

15   Finally, the Court construes coverage "broadly in favor of the insured," while simultaneously

16   strictly construing exclusionary provisions "against the insurer and liberally interpreted in favor

17   of the insured." *San Jose Sharks*, 98 Cal. App. 5th at 166 (internal quotation marks and citation

18   omitted).

19          Plaintiffs assert that the language of the "Driver Criteria" paragraph is ambiguous, and

20   therefore should be construed in their favor. (Ex. A, Doc. 6-1 at 15.)  Plaintiffs argue that the

21   contract specifies a driver is added to the policy "after his MVR is approved."  (Doc. 14 at 3

22   (emphases omitted).)  They argue also that the policy fails to mention "that the date of the

23   accident will determine covered drivers." *Id.*  Thus, in Plaintiffs view, a driver must first have his

24   MVR approved, then is added to the policy—the date of the accident does not control. *Id.* at 3–4.

25          Plaintiffs' reading of the policy is unreasonable.  The policy contemplates—and the plain

26   language of its terms proscribes—that a driver must satisfy minimum requirements (including

27   MVR approval) *before* they are hired and before they begin driving for S&J.  (Ex. A, Doc. 6-1 at

28   6, ¶ G.)  They "must have his/her Motor Vehicle Report (MVR) approved by Continental

8

1    Insurance Agency within 7 days of their employment with the subject trucking firm." (*Id.* at 15.)

2    "If any of the Driver Criteria, including the following is not fully complied with, then the driver is

3    not acceptable or approved and will result in any claim or loss involving such unacceptable or

4    unapproved driver as being not covered for any and all coverage's [sic] that might otherwise have

5    been applicable." *Id.* In very clear terms, the policy states that "Claims with Unscheduled Drivers

6    will not be paid." (*Id.*)

7         In other words, by the plain terms of the policy, the insurance contract requires a driver to

8    satisfy minimum requirements and earn Continental's approval before being added as a driver for

9    the insured.  Only then, will the insurance company provide coverage for that driver.  *This* is the

10   sequence of events that must occur to establish coverage.  Plaintiffs' Complaint makes clear that

11   Harminder drove the Freightliner, and collided with another vehicle, before Continental's

12   approval of his MVR or *any other* minimum requirements set forth in the policy. Thus, at the time

13   of the incident, Harminder was an "Unscheduled Driver" because he had not yet received

14   approval to drive under any of the detailed criteria.[4]

15        Furthermore, though they acknowledge in briefing that "the procedure to add a driver is

16   one of sequence . . . First, [Harminder's] MVR must be approved," (Doc. 14 at 3), Plaintiffs'

17   Complaint never alleges *when* Continental *approved* of Harminder's MVR, if at all.  (*See*

18   *generally* Doc. 6.)  Instead, the Complaint asserts only that S&J requested coverage for

19   Harminder within six days of the start of his employment. However, nowhere in the plain terms

20   of the policy does it allow Continental or United only seven days to approve of a new driver;

21   rather the policy requires that the new driver to seek to have his MVR approved within seven

22   days.[5] (Ex. A, Doc. 6-1 at 15.)

23

24   _____

24   [4] As noted above, Harminder was hired on April 3, 2021, and was involved in the collision on April 5,
25   2021.  (Doc. 6 at ¶¶ 15, 19.) On April 9, 2021, S&J emailed JSI with the MVR to attached.  (Ex. B, Doc.
25   6-1 at 23 ("Attached is the MVR & old License copy for Driver.").

26   [5] This is not simply a distinction without a legal difference, because the burden of approval therefore falls
27   on the driver, and not Continental.  As further explained, even if Plaintiffs' reading of this language is
     correct, and their application of Harminder's MVR on the sixth day of his employment is sufficient, this
28   still does not imply that Continental approved him as a driver pertaining to all other required Driver
     Criteria.  *That* is required for Harminder, or any new driver, to gain coverage before driving for S&J.

1    Even if Continental approved of Harminder's MVR within six days of his employment—

2    which it did not—this does not necessarily mean that Continental and United had *added*

3    Harminder to the policy.  The "Driver Criteria" paragraph sets out a list of further requirements,

4    and the exclusion provision makes clear that a driver must be approved before becoming entitled

5    to coverage under the policy.  (*Id.*)  At the very least, without Continental's approval of

6    Harminder's MVR at the time of the accident, it is clear from Plaintiffs' Complaint, then, that he

7    was an "unapproved driver" that had not yet "fully complied with" the Driver Criteria.  As such,

8    Harminder was excluded from the policy on the date of his accident.  (*Id.*)

9    It is an unreasonable reading of the policy to conclude that an employee may drive for

10   S&J, damage one of S&J's vehicles, and *then* earn approval of its MVR and other minimum

11   criteria, be added as a covered party under the insured, and then retroactively apply that coverage

12   to the date of the accident.[6]  The Court concludes that Plaintiffs have failed to plausibly state a

13   claim for either breach of contract or breach of the implied covenant of good faith and fair

14   dealing, because under the clear and explicit terms of the contract, when giving meaning to each

15   of its terms, it is clear that Harminder was not covered on the date of his automobile collision.  A

16   reading in Plaintiffs' favor contravenes a commonsense, plain reading of the policy.  The Court

17   therefore **GRANTS** Defendants' motion to dismiss Plaintiffs' first two causes of action sounding

18   in contract law.

19       C.      Third-Party Beneficiary

20   Plaintiffs allege that because Sukhvir leased a tractor to S&J, which was damaged by the

21   automobile collision, Sukhvir suffered as a third-party beneficiary to the contract when United

22   and Continental denied S&J's insurance claim[7].  (Doc. 6 at 10-11.)

23   Defendants move to dismiss this claim, maintaining that Sukhvir lacks standing to sue

24   United because (1) Sukhvir is not a party to the contract, (2) he cannot sustain a claim even if

---

25
26   [6] Though Harminder was covered effective April 9, 2021, this has no bearing on the interpretation of the
     policy's terms. By its plan meaning Harminder was an unscheduled driver on April 5, 2021, the date of the
     accident.

27
28   [7] While not explicitly alleged, the Court construes Plaintiffs' claim as "Third Party Beneficiary Breach of
     Contract."  *E.g.*, *Quillinan v. Papavassiliou*, No. C 12-04159 CRB, 2013 WL 428604, at *2 (N.D. Cal.
     Feb. 1, 2013).

1   Sukhvir is a member, shareholder, or owner of S&J, and (3) the fact that he guaranteed the loan

2   for the freightliner does not confer on him third-party beneficiary status under California law

3   because the policy does not name him as a beneficiary nor does it state an intent to benefit him.

4   (Doc. 11-1 at 10–11.)  Plaintiff disagrees and urges that the insurance contract intended to

5   encompass Sukhvir as a beneficiary, and that the contract did not need to explicitly name him as a

6   party.  (Doc. 14 at 7 ("Express citation to a particular person is not required to obtain a rightful

7   benefit from insurance coverage.").)

8       In *Goonewardene v. ADP, LLC*, the California Supreme Court set forth a three-part test in

9   applying the third-party beneficiary doctrine.  6 Cal. 5th 817, 829 (2019).  The Court held that it

10  "carefully examine[s] the express provisions of the contract at issue," and looks to all "relevant

11  circumstances under which the contract was agreed to, in order to determine not only (1) whether

12  the third party would in fact benefit from the contract, but also (2) whether a motivating purpose

13  of the contracting parties was to provide a benefit to the third party, and (3) whether permitting a

14  third party to bring its own breach of contract action against a contracting party is consistent with

15  the objectives of the contract and the reasonable expectations of the contracting parties."  *Id.* at

16  830.  "All three elements must be satisfied to permit the third party action to go forward."  *Id.*

17  For this reason, California Code of Civil Procedure § 1559 ("Enforcement by third party

18  beneficiary") states that "[a] contract, *made expressly for the benefit* of a third person, may be

19  enforced by him at any time before the parties thereto rescind it."  Cal. Civ. Code § 1559

20  (emphasis added).  However, "the mere fact that a contract results in benefits to a third party does

21  not render that party a 'third party beneficiary.'"  *Ford Motor Warranty Cases*, 89 Cal. App. 5th

22  1324, 1336 (2023) (internal quotation marks and citation omitted).  "Nor does the knowledge that

23  the third party *may* benefit from the contract suffice."  *Id.* at 1336–37 (emphasis added) (citation

24  omitted).  "Rather, the parties to the contract must have *intended* the third party to benefit."  *Id.* at

25  1337 (emphasis in original) (citation omitted).

26      Plaintiffs' Complaint does not address the final two elements for this claim:  that the

27  "motivating purpose" of the parties' insurance policy was to benefit Sukhvir or that allowing

28  Sukhvir to bring his own third-party breach of contract claim is "consistent with the objectives"

11

1    and reasonable expectations of the contracting parties.  *Goonewardene*, 6 Cal. 5th at 830.

2    Instead, Plaintiffs allege that "[t]he tractor Sukhvir leased to S&J *was to benefit Sukhvir* in

3    income to Sukhvir from S&J," (Doc. 6 at ¶ 66), and that Sukhvir "had a direct insured interest in

4    the insurance policy as he was the guarantor on the loan securing the tractor."  (*Id.* at ¶ 17.)  In

5    conclusory fashion, Plaintiffs allege that the policy "was to protect his interest and to ensure his

6    benefit," however, Plaintiffs fail to allege that the parties had Sukhvir's interests in mind during

7    contract negotiations, that the motivating purpose of the contract was for Sukhvir's benefit, or

8    that the objectives and expectations of the parties included Sukhvir.  Sukhvir's incidental benefit

9    to the contract, and his belief that he may benefit from the contract, cannot suffice.  *Ford*, 89 Cal.

10   App. 5th at 1336–37.  As such, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs'

11   third cause of action.

12          D.     Conspiracy to Engage in Bad Faith

13          Plaintiffs' fourth cause of action alleges that Defendants "conspired to engage in

14   insurance bad faith . . . by taking actions and failing to act."  (Doc. 6 at ¶ 70.)  This conspiracy

15   claim stems from Defendants "improperly denying Plaintiffs' rightful policy claim."  (*Id.* at ¶ 73.)

16   Defendants move to dismiss this claim, stating that United "is the only defendant obligated under

17   the policy contract," and that Continental and Trinity, as agents of United, were not bound by the

18   policy.  (Doc. 11-1 at 12.)

19          The Court agrees with Defendants.  First, this claim is premised on the denial of Plaintiffs'

20   insurance claim, and breach of covenant of good faith and fair dealing claim, which the Court has

21   concluded should be dismissed.  "Moreover, as agents and employees of the defendant insurers,

22   [Continental and Trinity] cannot be held accountable on a theory of conspiracy."  *Strawn v.*

23   *Morris, Polich & Purdy, LLP*, 30 Cal. App. 5th 1087, 1101–02 (citation omitted).  United is the

24   only named insurer on the policy.  (Ex. A, Doc. 6-1 at 7.)  A conspiracy claim therefore cannot

25   plausibly survive.  The Court accordingly **GRANTS** Defendants' Motion to Dismiss Plaintiffs'

26   fourth cause of action.

27          E.     UCL Claim

28          The UCL defines "unfair competition" to include "any unlawful, unfair or fraudulent

business act or practice[.]" Cal. Bus. & Prof. Code § 17200.  "The UCL is not confined to 'anti-competitive' business practices," but rather "extend[s] the meaning of unfair competition to anything that can properly be called a business practice and that at the same time is forbidden by law." *Alch v. Sup. Ct.*, 122 Cal. App. 4th 339, 401 (2004) (internal quotation marks and citation omitted); *Barquis v. Merchants Collection Ass'n*, 7 Cal. 3d 94, 111 (1972).

Defendants move to dismiss the claim under California's UCL, arguing that the Complaint fails to satisfy *Twombly* and *Iqbal*'s pleading demands.  (Doc. 11-1 at 14.) The Complaint states "Defendants violated Section 17200 [of] the California Business and Professions Code by taking actions and failing to act, including, but not limited to the actions alleged herein."  (Doc. 6 at ¶ 81.)  This assertion is conclusory and vague allegations because it fails to apprise the defendants of the actions at issue. "Conclusory allegations and unreasonable inferences do not provide [] a basis" for determining a plaintiff is entitled to relief.  *Coronavirus Reporter v. Apple, Inc.*, 85 F.4th 948, 954 (9th Cir. 2023) (citation omitted);  *Doe I v. Cisco Sys., Inc.*, 73 F.4th 700, 713 (9th Cir. 2023) ("Although a reviewing court must accept a complaint's factual allegations as true, the same is not true of legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (cleaned up) (internal quotation marks and citation omitted).[8]  Thus, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiffs' fifth cause of action under the UCL.

F.      Intentional Misrepresentation

Finally, Plaintiffs bring a claim of intentional misrepresentation, stating that "Defendants represented to Plaintiffs that coverage for a driver that was scheduled into the Policy after an accident would automatically be denied," that they would deny coverage for a driver scheduled "outside the 7 days of his employment, even before an accident," and "that coverage for a driver would never be retroactive."  (Doc. 6 at ¶¶ 103–05.)  Defendants move to dismiss this claim for

---

[8] Relatedly, claims brought under the UCL are also subject to Rule 9(b)'s particularity requirements.  *E.g.*, *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) ("Because Davidson's common law fraud, CLRA, FAL, and UCL causes of action are all grounded in fraud, the FAC must satisfy the traditional plausibility standard of Rules 8(a) and 12(b)(6), as well as the heightened pleading requirements of Rule 9(b).") (citations omitted).  This serves another basis to dismiss Plaintiffs' instant UCL claim.

failing to satisfy Federal Rule of Civil Procedure 9(b)'s particularity pleading requirements. (Doc. 11-1 at 13.)

It is well-established that claims for intentional misrepresentation sound in fraud and are therefore subject to Rule 9(b)'s particularity requirements.  *See Avakian v. Wells Fargo Bank, N.A.*, 827 F. App'x 765, 766 (9th Cir. 2020) ("Borrowers' claims for unfair business practices, intentional misrepresentation, fraud, and negligent misrepresentation are all fraud-based claims, and must meet the heightened pleading requirements of Rule 9(b)[.]") (citation omitted); *Ramos v. Ramos*, 691 F. App'x 487, 488 (9th Cir. 2017) ("Dismissal of plaintiffs' intentional misrepresentation claim was proper because plaintiffs failed to allege facts with specificity required by Federal Rule of Civil Procedure 9(b).") (citations omitted); *LeGrand v. Abbot Lab'ys*, 655 F. Supp. 3d 871, 895 (N.D. Cal. 2023).  Indeed, in California, "fraud" is defined as "an intentional misrepresentation, deceit, or concealment of a material known fact known to the defendant," making the two concepts inherently intertwined.  Cal. Civ. Code § 3294(c)(3).

"Fraud allegations under Rule 9(b) must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  *In re Facebook, Inc. Sec'ys Litig.*, 87 F.4th 934, 947 (9th Cir. 2023) (internal quotation marks and citation omitted).  Such particularity requires that Plaintiffs include "the who, what, when, where, and how of the misconduct charged, including what is false or misleading about a statement, and why it is false."  *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1145 (9th Cir. 2021) (internal quotation marks and citation omitted).

Plaintiffs identify three representations Defendants made to Plaintiffs, which they allege were intentional misrepresentations.  (Doc. 6 at ¶¶ 103-106.)  Such alleged misrepresentations, however, do not satisfy Rule 9(b)'s heightened particularity.  More importantly, however, the Court has already concluded that such purported representations made to Plaintiff were not false but were the only reasonable interpretation of the policy. *Aton Ctr., Inc. v. United Healthcare Ins. Co.*, 93 Cal. App. 5th 1214, 1245 (2023) (internal quotation marks and citation omitted).[9]  Thus,

---

[9] Even if they were false, there is no factual showing that the Plaintiffs relied on the false statements or

1  the Court **GRANTS** Defendants' Motion to Dismiss Plaintiffs' eighth and final claim for

2  intentional misrepresentation.

3  G.    Leave to Amend

4  The Ninth Circuit has admonished district courts to *sua sponte* determine whether leave to

5  amend should be granted. *See Unified Data Servs., LLC v. Fed. Trade Comm'n*, 39 F.4th 1200,

6  1208 (9th Cir. 2022) ("[W]e have repeatedly instructed that leave to amend should be given, even

7  sua sponte, if amendment could cure a pleading defect."). Courts have broad discretion to grant

8  leave to amend a complaint. *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 420 (9th Cir. 2020). In

9  determining whether a plaintiff should be granted leave to amend, courts consider "the presence

10  or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by

11  previous amendments, undue prejudice to the opposing party and futility of the proposed

12  amendment." *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 814–15 (9th Cir. 2020) (internal

13  quotation marks and citation omitted). Generally, Rule 15 advises that "[t]he court should freely

14  give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Indeed, "[i]t is the black-letter law

15  that a district court must give plaintiffs at least one chance to amend a deficient complaint,"

16  unless there is "a clear showing that amendment would be futile." *Barke v. Banks*, 25 F.4th 714,

17  721 (9th Cir. 2022) (internal quotation marks and citation omitted).

18  It is futile to grant Plaintiffs leave to amend their first and second causes of action

19  sounding in contract law, as insurance policy interpretation is a question of law for the Court to

20  decide, and the Court has already determined that Plaintiffs are not owed benefits under the

21  policy's plain language. Similarly, without coverage for their claims, it is futile to grant Plaintiffs

22  leave to amend their third cause of action for third-party beneficiary breach of contract. The

23  deficiencies in Plaintiffs' conspiracy claim cannot be cured with further amendment, as it is

24  premised on denial of benefits, and because United is the only insurer to the contract. Finally,

25  Plaintiffs' eighth cause of action for intentional misrepresentation, even if pleaded with further

26  particularity, cannot be cured, because Defendants' alleged statements were not false,

27  misrepresentations under the correct interpretation of the policy. Accordingly, the Court

28

that they caused Plaintiffs. (Doc. 6 at 16, ¶ 108-110)

15

1    **DENIES** Plaintiffs' leave to amend their first, second, third, fourth, and eighth claims.

2           Regarding Plaintiffs' abandoned negligence claims, the Court **DENIES** leave to amend

3    these claims as well.  *See United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 681

4    (9th Cir. 2018) ("And the district court did not abuse its discretion in denying leave to amend here

5    because amendment could not have revived this abandoned claim.") (citation omitted); *see also*

6    *Leon-Calderon v. Old Dominion Freight Line, Inc.*, No. 2:22-cv-08930-MCS-KS, 2023 WL

7    1931328, at *7 (C.D. Cal. Feb. 10, 2023) ("Given his apparent abandonment of the claim, the

8    Court does not give Plaintiff leave to amend his Labor Code section 1102.5 claim.") (citation

9    omitted). Thus, the Court **GRANTS** Plaintiffs one final opportunity to amend their Complaint

10   only to address the pleading standards required for the UCL claim.  (Doc. 6 at 12–13.)

11                                         **CONCLUSION**

12          Based upon the foregoing, the Court **ORDERS**:

13          (1) Defendants' Motion to Dismiss (Doc. 11) is **GRANTED**.

14          (2) Plaintiffs' first, second, third, fourth, sixth, seventh, and eighth causes of action are

15                 **DISMISSED WITHOUT LEAVE TO AMEND**.

16          (3) Plaintiffs' fifth under the UCL cause of action is **DISMISSED WITH LEAVE TO**

17                 **AMEND**.

18          (4) **Within 21 days**, Plaintiffs may file an amended complaint or a notice of dismissal.

19                 Failure to timely file either document will result in dismissal of their case with

20                 prejudice pursuant to Rule 41(b).[10]

21

22   IT IS SO ORDERED.

23      Dated:   **April 26, 2024**

                                                      *Jennifer L. Thurston*
                                                      UNITED STATES DISTRICT JUDGE

24

25

26

27   ---

28   [10] See *Edwards v. Marin Park, Inc*., 356 F.3d 1058, 1063–1065 (9th Cir. 2004) (stating that a plaintiff's failure to take any action in response to a court's ultimatum to the plaintiff to either amend their complaint or indicate to the court that it will not do so "is properly met with the sanction of a Rule 41(b) dismissal").